**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

CASE NO.: _____

MARTHA PHILLIPS and JERRY PHILLIPS,
on behalf of themselves and all others
similarly situated,

    Plaintiffs,

v.                                                **CLASS ACTION COMPLAINT**

NCL CORPORATION LTD d/b/a             **JURY DEMAND**
NORWEGIAN CRUISE LINES,
a foreign corporation,

    Defendant.
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL[1]**

Plaintiffs Martha Phillips ("Martha") and Jerry Phillips ("Jerry") (collectively, "Plaintiffs") bring this action against Defendant NCL Corporation LTD d/b/a Norwegian Cruise Lines ("Norwegian") on behalf of themselves and a putative class of other similarly situated consumers who paid a concealed kickback to Norwegian when they purchased travel insurance policies through Norwegian's so-called "Booksafe Travel Protection Plan."

**INTRODUCTION**

1.    Over the past few years, a number of states and insurance regulators have conducted extensive investigations into the travel insurance industry, including its use of "distribution participants" to solicit the purchase of travel insurance. These regulators have identified a number

---

[1] On August 24, 2018, Undersigned Counsel already filed a proposed class action against Carnival Cruise Lines, Case No. 1:18-cv-23463-KMW, seeking redress for consumers regarding almost identical deceptive and unfair business practices regarding the sale of these travel insurance policies. That case is pending before the Honorable Kathleen M. Williams. Accordingly, Undersigned Counsel has marked this case as related to that action, and will be moving to consolidate them all in due course.

of unfair and deceptive marketing and sales tactics used to sell "travel insurance," including the payment of undisclosed kick-backs to the "distribution participant" which are passed on to the consumer in the form of inflated premiums for the travel insurance product. These undisclosed kick-backs are further concealed by the distribution participant's practice of bundling the insurance product together with other, non-insurance products for a single price, while at the same time giving the impression that the insurance product is being purchased by the consumer on a pass-through basis from the insurer.

2. As a result of the regulatory investigations into these practices, various insurance companies offering travel insurance products, including specifically Transamerica Casualty Insurance Company ("Transamerica") and Nationwide Mutual Insurance Company ("Nationwide"), have entered into multi-state regulatory settlement agreements agreeing to cease these unfair and deceptive practices. However, none of these regulatory agreements have afforded relief directly to victimized consumers, nor have they prevented distribution participants, such as Norwegian, from continuing to engage in these highly misleading – but lucrative – business practices.

3. Very recently, Senator Edward J. Markey of Massachusetts released a report on his investigation into many of these unfair and deceptive practices in the context of the online travel insurance industry.[2] The criticisms voiced in Senator Markey's report include concerns that online travel insurance solicitations (1) offer only bare-bones travel insurance coverage with extensive

---

[2] Flyer Beware: Is Travel Insurance Worth It?: Senator Markey releases new report that details questionable travel insurance marketing practices for policies that overpromise and under-deliver, (August 21, 2018), https://www.markey.senate.gov/news/press-releases/flyer-beware-is-travel-insurance-worth-it (last accessed August 24, 2018); Flyer Beware: Is Travel Insurance Worth It? (August 2018) https://www.markey.senate.gov/imo/media/doc/Flyer%20Beware%20Report.pdf (last accessed August 24, 2018).

exclusions; (2) utilize on online marketing process that encourages and pressure consumers to purchase travel insurance policies; and (3) generate undisclosed fees that inflate the price of every travel insurance policy sold.

4. As alleged in detail below, Norwegian has engaged in precisely these unfair and deceptive practices on a nationwide basis from its headquarters in Miami, Florida, through its on-line marketing and selling of travel insurance policies in its "Booksafe Travel Protection Plan" ("BTPP"). The purpose of this action is: (1) to compensate Plaintiffs and other victimized consumers for Norwegian's unfair and deceptive practices as a distribution participant in the sale of travel insurance, and (2) to put an end to Norwegian's use of such unfair and deceptive sales practices.

5. Specifically, Norwegian's BTPP includes the offer of a travel insurance policy ("Travel Insurance Policy"), issued (a) before October 1, 2017, by Transamerica or its affiliates ("the Transamerica Policy") and (b) after October 1, 2017 by Nationwide or its affiliates ("the Nationwide Policy"). Norwegian's website clearly states that the Travel Insurance Policy is independently underwritten by Transamerica or later Nationwide and through hyperlinks that direct the consumer to a non-Norwegian website (https://affinitytravelcert.com/) which states on the website header "Aon Affinity" ("Aon"), the managing general agent for Transamerica and Nationwide.

6. A reasonable consumer, like Plaintiffs, would thus believe that they are contracting directly with Transamerica or Nationwide for the purchase of the Travel Insurance Policy, and that the premium for that Travel Insurance Policy is passed through to Transamerica or Nationwide by Norwegian from the price of the BTPP.

7. In reality, Norwegian receives an undisclosed kickback from Transamerica, Nationwide or Aon, in the form of concealed commission for every Travel Insurance Policy sold through its BTPP. Norwegian unfairly and deceptively conceals the kickback and the fact that consumers are paying inflated prices for the Travel Insurance Policies to pay for that kickback.

8. Plaintiffs accordingly seek relief for themselves and on behalf of a putative nationwide class of other similarly situated consumers who purchased a Travel Insurance Policy through Norwegian's BTPP ("the Class") under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201–213. Alternatively, Plaintiffs seek relief for a statewide subclass under FDUTPA. Finally, Plaintiffs also seek declaratory and injunctive relief to put an end to Norwegian's unfair and deceptive kickback practices.

9. Plaintiffs are not suing under any cruise ticket contract with Norwegian; this action solely relates to Norwegian's business practices concerning its omissions relating to independent sale of the Travel Insurance Policies and the remuneration Norwegian receives as a distribution participant in that sale.

**PARTIES, JURISDICTION, AND VENUE**

10. Plaintiff Martha is, and at all material times was, an individual who resides in and is a citizen of Peach County, Georgia. Martha is over the age of 18 and is *sui juris*. Martha purchased Travel Insurance Policies through Norwegian's BTPP on or about April 12, 2017 and September 18, 2018.

11. Plaintiff Jerry is, and all material times was, an individual who resides in and is a citizen of Peach County, Georgia. Jerry is over the age of 18 and is *sui juris*. Jerry purchased Travel Insurance Policies through Norwegian's BTPP on or about April 12, 2017 and September 18, 2018.

12. Defendant Norwegian, is a corporation and citizen of Florida, with its self-proclaimed "world headquarters" and principal place of business located 7665 Corporate Center Drive, Miami, FL, 33126. Norwegian does business regularly throughout the United States, including and from within the state of Florida.

13. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because this is an action for a sum exceeding $5,000,000.00, exclusive of interest and costs, and in which at least one class member is a citizen of a state different than the defendant.

14. This Court has personal jurisdiction over Norwegian because it continuously and systematically operates, conducts, engages in, and carries on business in Florida. Upon information and belief, Norwegian's United States business operations (including specifically its functioning as a distribution participant for travel insurance) are controlled, directed, and for the most part carried out in Miami, Florida.

15. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b) and § 1391(c) because Norwegian resides in this district for purposes of the statute.

16. Norwegian is subject to the personal jurisdiction of this Court for purposes of this action.

**COMMON ALLEGATIONS**

17. Norwegian operates at least 15 ships with a combined capacity for 46,555 passengers, sailing to destinations including the Caribbean, Cuba, the Bahamas, Mexican Riviera, Alaska, Hawaii, the Pacific Coast, Panama Canal, Bermuda, Canada, New England, South America, Australia, New Zealand, Europe, Asia, and Florida.[3] In 2018, Norwegian was estimated

---

[3] Gene Sloan, *The fleet and home ports of Norwegian Cruise Line, by the numbers*, USA Today, September 5, 2017, https://www.usatoday.com/story/travel/cruises/2017/09/05/fleet-and-home-ports-norwegian-cruise-line-numbers/632134001/ (last visited Sep 19, 2018).

to hold an 8.4% share of cruise industry revenue (or $3,898,000,000.00) and 8.7% of passengers (or 2,269,800).[4]

18. When a consumer visits Norwegian's website, http://www.NCL.com, the site allows the consumer to select her preferred destination and travel dates.

19. At all material times, before completing their cruise purchases Norwegian's website prompts customers to elect whether to purchase the BTPP, which necessarily includes a Travel Insurance Policy. A copy of the BTPP along with specimens of the Transamerica Policy and the Nationwide Policy are attached as Composite Exhibit A.

20. The Transamerica Policy and the Nationwide Policy each offer extremely limited coverage, operating as little more than an excess policy that pays <u>secondary</u> to "Other Valid and Collectible Group Insurance" or "indemnity." *See* Composite Exhibit A.

21. Norwegian marketed the BTPP and the Travel Insurance Policies to its customers in a uniform fashion, such that when purchasing travel insurance the customer is exposed to the same marketing language soliciting the sale of the Travel Insurance Policy.

22. In making the Travel Insurance Policy available to customers on its website through the BTPP, Norwegian does not hold itself out as the seller or issuer of the Travel Insurance Policy. Norwegian simply facilitates the sale of the Travel Insurance Policy as a distribution participant, by including it in the BTPP.

23. At the same time Norwegian marketed the BTPP to its customers, however, it was receiving a kickback in the form of an undisclosed, unearned commission on the sale of the Travel Insurance Policies. Norwegian deliberately omitted any disclosure of the kickback to Plaintiffs and

---

[4] https://www.cruisemarketwatch.com/market-share/ (last accessed September 19, 2018).

the other members of the Class. Norwegian's marketing practices were and are deceptive and unfair.

24. Norwegian furthermore uses the BTPP to further conceal its undisclosed profits in the sale of the Transamerica Policies and Nationwide Policies, by bundling the insurance and non-insurance products into a single price package. Specifically, the BTPP is an amalgamation of three separate products offered for sale by three separate entities:

- The Cancellation Fee Waiver Program, <u>a non-insurance product</u> <u>provided by Norwegian</u>. If a purchaser canceled her cruise for a covered reason, Norwegian would waive its cancellation fee and refund the unused portion of the cruise.

- The Travel Insurance Policy <u>an insurance product</u> <u>provided by Transamerica or Nationwide</u>.

- The Carefree Worldwide Emergency Assistance Program, <u>a non-insurance product provided by On Call International</u>.

25. Although the BTPP was and is sold for one consolidated price, it was and is marketed as being comprised of three separate products, only one of which was provided by Norwegian, while the other two were provided by two different entities. Therefore, a reasonable consumer was misled into believing that the price she pays for the BTPP is comprised of three "pass-through" charges, which Norwegian simply collects and passes-through to each respective provider: a charge from Norwegian for the Cancellation Fee Waiver, a pass-through charge from Transamerica or Nationwide for the Travel Insurance Policy, and a pass-through charge from On Call International for the Travel Assistance Program.

26. By bundling the Travel Insurance Policy into the BTPP, Norwegian is able to further conceal the fact that consumers were being vastly overcharged for the Travel Insurance Policy due to the kickbacks Norwegian received for every Transamerica Insurance Policy sold through its BTPP.

27. At all material times, Norwegian aggressively marketed the BTPP to its customers while concealing its profit interest in the sale of the Travel Insurance Policy. These marketing practices were deceptive and unfair.

28. For example, at all material times, before a customer can purchase a cruise ticket, Norwegian's website required customers to make an election to purchase the BTPP (including the Travel Insurance Policy) in a completely separate transaction. Upon information and belief, until October 2017, if the customer refused to make an election regarding the BTPP, then she could not proceed with purchasing her cruise ticket. The customer was forced to check either a "yes" or "no" box regarding purchase of the BTPP. The "yes" option was highlighted in bold type and placed above the box for "no," which did not appear in bold type. The customer could not simply ignore the offering and proceed to her ticket purchase transaction.

29. Upon information and belief, since October 2017, Norwegian's website still appears to require customers to make this election. Norwegian's website allows the customer to proceed with purchasing her cruise ticket without making an election, but the apparently "mandatory" choice still appears to the customer on Norwegian's website just as it did before October 2017, with the "yes" option highlighted in bold type and placed above the box for "no," which does not appear in bold type.

30. Despite aggressively marketing the BTPP on its website, Norwegian has never disclosed that it receives a profit based on the sale of the Travel Insurance Policy. Indeed, in its BTPP marketing materials, Norwegian differentiated that while the Cancellation Fee Waiver Program is "provided by Norwegian Cruise Lines," the Travel Insurance Policy is underwritten by Transamerica or Nationwide, without more.

31. Through these misleading marketing materials, objective consumers would reasonably infer that when they purchased a BTPP, the funds to cover the Travel Insurance Policy's cost were transmitted to Transamerica, who Norwegian identified as the company offering the Transamerica Policy for sale to the customer, or to Nationwide, who Norwegian identifies as the company offering the Nationwide Policy for sale to the customer.

32. In reality, and completely unbeknownst to the consumer, the price charged for the Transamerica Policy was inflated because, in addition to charging the premium for the Transamerica Policy, Norwegian charged and received the undisclosed, unearned commission from Transamerica in exchange for making Transamerica the exclusive travel insurance provider for the BTPP. By selling the Transamerica Policy through the BTPP, Norwegian created for itself a massive hidden profit-center. Norwegian continues these unfair and deceptive practices by selling the Nationwide Policy through the BTPP.

33. In short, Norwegian has, through omission, engaged in a pattern of unlawful profiteering, deceit, and self-dealing with regard to the Travel Insurance Policies.

34. Recently, travel insurers around the country, including both Transamerica and Nationwide, have entered into multi-state regulatory settlement agreements regarding their unfair and deceptive practices in the marketing of travel insurance. Attached as Composite Exhibit B are copies of the multi-state regulatory agreements Transamerica entered into on December 15, 2017 and Nationwide entered into on January 3, 2018.

35. A condition of Transamerica's multi-state regulatory agreement required Transamerica to <u>exit the travel insurance industry entirely</u> for five years as a result of the unfair and deceptive business practices Transamerica employed and allowed its distribution partners, such as Norwegian, to employ.

36. Under the regulatory settlements, the unfair and deceptive practices travel insurers have agreed will no longer be used include:

- combining and packaging the cost of Assistance Services or Travel Cancellation Fee Waivers with the cost of Travel Insurance in its rate filings and in the sale of Travel Insurance to consumers;
- allowing Distribution Participants to combine and package the cost of Assistance Services or Travel Cancellation Fee Waivers with the cost of Travel Insurance when offering these products and services for sale; and
- charging a separate fee for travel insurance in addition to the travel insurance premium or add any charges or fees for any of the travel insurance products or related services without a separate written agreement with the insured.

*See* Composite Exhibit B.

37. Throughout the Class Period, Norwegian engaged in these practices in the marketing and sale of the Travel Insurance Policy through Norwegian's BTPP. Since Nationwide and Transamerica entered into these multi-state regulatory agreements, Norwegian has in some instances modified its website's functionality and marketing materials to attempt to conform to their requirements. Discovery will reveal the timing of these changes and past versions of Norwegian's website that utilized highly deceptive and unfair tactics to mislead consumers into purchasing the Travel Insurance Policy so that Norwegian could unfairly profit at consumers' expense.

38. Although Transamerica has exited the travel insurance industry as of December 31, 2017, since October 2017 Norwegian has offered the Nationwide Policy in its BTPPs, still utilizes the deceptive and unfair marketing and sales practices outlined in this Complaint, and is still receiving substantial kickbacks for every Travel Insurance Policy sold through its BTPP.

39. Norwegian has never disclosed to Plaintiff, or any of the class members, the true nature of its relationship with Transamerica or Nationwide. Specifically, Norwegian never disclosed the fact that it received a substantial kickback on the Transamerica Policy that Norwegian offered for sale with the BTPP. Nor has Norwegian ever disclosed that it is still receiving substantial kickbacks on every Travel Insurance Policy it sells.

40. The BTPP (and certainly the Travel Insurance Policies) would have been offered to Plaintiffs at a lower price but for the kickbacks paid to Norwegian.

## PLAINTIFF-SPECIFIC ALLEGATIONS

i. **Martha and Jerry Phillips**

41. On or about April 12, 2017, Plaintiffs purchased a Norwegian BTPP containing the Transamerica Policy for $218.00, online through Norwegian's website. *See* Exhibit C. On or about September 18, 2018, Plaintiffs purchased a Norwegian BTPP containing the Nationwide Policy for $520.00. *See* Exhibit D.

42. On the dates that Plaintiffs purchased the BTPPs, they did not know about Norwegian's kickback scheme. Plaintiffs would not have purchased the BTPPs had they known that the price of the BTPPs or Travel Insurance Policies were inflated because of the kickbacks from Transamerica, Nationwide or Aon to Norwegian in exchange for placement as the exclusive travel insurance providers for Norwegian. Instead, Plaintiffs would have purchased a stand-alone insurance policy from another insurer, or self-insured.

43. The BTPP (and certainly the Travel Insurance Policies) would have been offered at a lower price but for the kickback to Norwegian.

44. As a consequence of purchasing the Travel Insurance Policies, Plaintiffs lost money in the form of the overcharges paid as a result of the kickbacks to Norwegian.

## CLASS ACTION ALLEGATIONS

45. Plaintiffs bring this Complaint as a class action pursuant to Federal Rule of Civil Procedure 23.

### A. Class Definitions

46. Plaintiffs bring this action against Norwegian on behalf of themselves and all other persons similarly situated. Plaintiffs seek to represent the following nationwide class:

> All persons who, within the applicable limitations period, purchased a Travel Insurance Policy through Norwegian's Booksafe Travel Protection Plan. Excluded from this class are Norwegian, its affiliates, subsidiaries, agents, board members, directors, officers, and/or employees ("the Class").

47. Alternatively, Plaintiffs seek the certification of the following subclass for residents of the state of Florida:

### i. Florida subclass:

> All Florida persons who, within the applicable limitations period, purchased a Travel Insurance Policy through Norwegian's Booksafe Travel Protection Plan. Excluded from this class are Norwegian, its affiliates, subsidiaries, agents, board members, directors, officers, and/or employees.

48. Plaintiffs reserve the right to modify or amend the definition of the proposed Class before or after the Court determines whether such certification is appropriate. In particular, Plaintiffs may amend the complaint to join in additional consumers from other states in order to seek the certification of additional statewide classes or subclasses.

49. Norwegian has subjected Plaintiffs and the members of the Class to the same unfair, unlawful, and deceptive practices and harmed them in the same manner. The conduct described above was Norwegian's standardized and uniform business practice.

### B. <u>Numerosity</u>

50. The individual class members are so numerous that joinder of all members in a single action is impracticable. Norwegian operates thousands of cruises a year, and upon information and belief, it has sold thousands of Travel Insurance Policies during the Class Period.

51. The individual Class members are ascertainable, as the names and addresses of all Class members can be identified in the business records maintained by Norwegian. The precise number of Class members number at least in the thousands and can only be obtained through discovery, but the numbers are clearly more than can be consolidated in one complaint such that it would be impractical for each member to bring suit individually. Plaintiffs do not anticipate any difficulties in the management of the action as a class action.

### C. <u>Commonality/Predominance</u>

52. Common questions of law and fact exist as to Plaintiffs' and the Class members' claims. These common questions predominate over any questions solely affecting individual Class members, including, but not limited to, the following:

   a. Whether Norwegian engaged in a deceptive and unfair business practice by omitting disclosure of its financial interest in offering and selling the Travel Insurance Policies;

   b. Whether Norwegian further concealed the omission by bundling the insurance and non-insurance products to lead the reasonable consumer to believe it was a pass-through charge for the Travel Insurance Policies;

   c. Whether Norwegian received undisclosed kickbacks, commissions, or fees from the sale of the Travel Insurance Policies;

   d. Whether and to what extent Norwegian's conduct has caused injury to the Plaintiffs and the other members of the Class;

   e. Whether and to what extent Norwegian's unfair and deceptive practices are ongoing such that declaratory and/or injunctive relief are warranted.

### D. **Typicality**

53. Plaintiffs are members of the Class they seek to represent. Plaintiffs' claims are typical of the respective Class claims because of the similarity, uniformity, and common purpose of Norwegian's challenged misconduct conduct. Each Class member has sustained, and will continue to sustain, damages in the same manner as Plaintiffs as a result of Norwegian's challenged practices.

### E. **Adequacy of Representation**

54. Plaintiffs are adequate representatives of the Class they seek to represent and will fairly and adequately protect the interests of the Class members. Plaintiffs are committed to the vigorous prosecution of this action and has retained competent counsel, highly experienced in litigation of this nature, to represent them. There is no hostility between Plaintiffs and the unnamed Class members. Plaintiffs anticipate no difficulty in the management of this litigation as a Class action.

55. To prosecute this case, Plaintiffs have chosen the undersigned law firms, which have the financial and legal resources to meet the substantial costs and legal issues associated with this type of consumer class litigation.

### F. **Requirements of Fed. R. Civ. P. 23(b)(3)**

56. The questions of law or fact common to Plaintiffs' and each Class member's claims predominate over any questions of law or fact affecting only individual members of the class. All claims by Plaintiffs and the unnamed Class members are based on the common marketing and sales practices Norwegian utilized in its sale of the Travel Insurance Policies to Plaintiffs and the unnamed Class members.

57. Common issues predominate when, as here, liability can be determined on a class-wide basis, even when there will be some individualized damages determinations.

58. As a result, when determining whether common questions predominate, courts focus on the liability issue, and if the liability issue is common to the class as is in the case at bar, common questions will be held to predominate over individual questions.

### G. Superiority

59. A class action is superior to individual actions in part because of the non-exhaustive factors listed below:

   a. Joinder of all Class members would create extreme hardship and inconvenience for the affected customers as they reside throughout the country;

   b. Individual claims by Class members are impractical because the costs to pursue individual claims exceed the value of what any one Class member has at stake. As a result, individual Class members have no interest in prosecuting and controlling separate actions;

   c. There are no known individual Class members who are interested in individually controlling the prosecution of separate actions;

   d. The interests of justice will be well served by resolving the common disputes of potential Class members in one forum;

   e. Individual suits would not be cost effective or economically maintainable as individual actions; and

   f. The action is manageable as a class action.

### H. Requirements of Fed. R. Civ. P. 23(b)(1) & (2)

60. Prosecuting separate actions by or against individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party opposing the Class.

61. Norwegian has acted or failed to act in a manner generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## COUNT I

## VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

### (Alleged on behalf of the Class, or alternatively a Florida Subclass)

62. Plaintiffs re-allege paragraphs 1 through 61 as if fully set forth herein and further allege the following.

63. This Count is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

64. FDUTPA, section 501.201, *et seq.*, Florida Statutes, prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." § 501.204, Fla. Stat.

65. At all material times, Plaintiffs and all members of the Class were consumers within the meaning of Section 501.203, Fla. Stat., and are entitled to relief under FDUTPA in accordance with Section 501.211, Fla. Stat.

66. At all times material, Norwegian conducted trade and commerce within the meaning of Section 501.203, Fla. Stat.

67. Norwegian's conduct of utilizing deceptive and unfair marketing and sales practices and charging inflated amounts for the Travel Insurance Policies to Plaintiffs and the other members of the Class violates FDUTPA. Norwegian's challenged conduct was conceived, devised, planned, implemented, approved, and executed within the State of Florida, which has an interest in prohibiting violations of FDUTPA by defendants operating from within the State.

68. Norwegian is not a bank or savings and loan association regulated by the Florida Office of Financial Regulation of the Financial Services Commission. Further, it is not a bank or savings and loan association regulated by federal agencies.

69. At all material times, Norwegian engaged in unlawful schemes and courses of conduct through one or more of the unfair and deceptive acts and practices:

   a. Taking kickbacks, in the form of, among other things, unearned and undisclosed commissions from the sales of the Travel Insurance Policies in exchange for making Transamerica (before October 1, 2017) and/or Nationwide (from October 1, 2017 on) the exclusive travel insurance provider for the BTPP, and therefore charging an inflated price for the cost of the Travel Insurance Policies.

   b. Bundling the Travel Insurance Policies with non-insurance products into the BTPP and charging a single price for the BTPP, so consumers did not know what amounts they were paying for each of the three bundled products/services; and

   c. Presenting the BTPP to create the impression that it was comprised of three pass-through charges: (1) the cost of the Cancellation Fee Waiver, (2) the cost of the Travel Insurance Policy, and (3) the cost of Travel Assistance, even though Norwegian took an unearned, undisclosed commission from the inflated price of the Travel Insurance Policy.

70. The concealment and omissions of material facts and deceptions alleged in the foregoing paragraphs occurred in connection with Norwegian's trade and commerce in Florida.

71. Plaintiffs and the other members of the Class have sustained actual damages in the form of Norwegian's kickback as a direct and proximate result of Norwegian's unfair and unconscionable practices. Section 501.211(2), Florida Statutes, provides Plaintiff and the other members of the Class a private right of action against Norwegian and entitles them to recover their actual damages, plus attorneys' fees and costs.

72. Norwegian still utilizes many of the deceptive acts and practices described above and is still collecting a significant unearned commission from every Travel Insurance Policy sold. Plaintiffs and the other members of the Class have suffered and will continue to suffer irreparable harm if Norwegian continues to engage in such deceptive, unfair, and unreasonable practices. Section 501.211(1) entitles Plaintiffs and the Class to obtain declaratory and injunctive relief to put an end to Norwegian's unfair and deceptive scheme.

*Martha Phillips, et al. v. NCL Corporation LTD d/b/a Norwegian Cruise Lines*
*Class Action Complaint*

**WHEREFORE,** Plaintiffs, on behalf of themselves and the Class, demand judgment against Norwegian for compensatory damages, pre- and post-judgment interest, attorneys' fees, injunctive and declaratory relief, costs incurred in bringing this action, and any other relief as this Court deems just and proper.

### PRAYER FOR RELIEF

Plaintiffs accordingly respectfully request that the Court enter its Orders and Judgment:

a. Certifying this action to be a proper class action maintainable pursuant to Rule 23(a) and Rule 23(b)(1) and (2), or Rule 23(b)(3), Federal Rules of Civil Procedure, and appointing Plaintiffs as representatives of the Class(es), and appointing undersigned counsel as Class Counsel;

b. Enjoining Norwegian from continuing the acts and practices challenged by the Plaintiffs, including an order requiring Norwegian to make full disclosure to consumers of its retention of Travel Insurance Policy premiums sold through the BTPP and the amount of the kickback it receives;

c. Awarding Plaintiff and the Classes damages, injunctive relief, declaratory relief, attorneys' fees, and costs under FDUTPA;

d. Awarding pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

e. Awarding Plaintiff and Class members costs and disbursements and reasonable allowances for the fees of Plaintiff's and the Class Counsel and experts, and reimbursement of expenses;

f. Awarding such other relief as the Court deems just, equitable and proper.

### DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial as to all claims so triable.

*Martha Phillips, et al. v. NCL Corporation LTD d/b/a Norwegian Cruise Lines*
*Class Action Complaint*

Dated: September 21, 2018.

         Respectfully submitted,

        By: */s/ Adam Moskowitz*

         Adam Moskowitz, Esq.
         Florida Bar No. 984280
         adam@moskowitz-law.com
         Howard M. Bushman, Esq.
         Florida Bar No. 0364230
         howard@moskowitz-law.com
         Joseph M. Kaye, Esq.
         Florida Bar No. 117520
         joseph@moskowitz-law.com
         **THE MOSKOWITZ LAW FIRM, PLLC**
         2 Alhambra Plaza
         Suite 601
         Coral Gables, FL 33134
         Telephone: (305) 740-1423

         Andrew S. Friedman
         (*to be admitted Pro Hac Vice*)
         afriedman@bffb.com
         Francis J. Balint, Jr.
         (*to be admitted Pro Hac Vice*)
         fbalint@bffb.com
         **BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.**
         2325 East Camelback Road, Suite 300
         Phoenix, Arizona 85016
         Tel: (602) 274-1100
         Fax: (602) 274-1199

         Kimberly Lambert Adams
         Florida Bar No. 14479
         kadams@levinlaw.com
         **LEVIN, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY, PROCTOR, P.A.**
         316 South Baylen St.
         Pensacola, FL 32502
         Tel: (850) 435-7056
         Fax: (850) 436-7056

*Martha Phillips, et al. v. NCL Corporation LTD d/b/a Norwegian Cruise Lines*
*Class Action Complaint*

William F. "Chip" Merlin, Jr.
Florida Bar No. 364721
cmerlin@MerlinLawGroup.com
**MERLIN LAW GROUP**
777 S. Harbour Island Blvd., Suite 950
Tampa, FL 33602
Telephone: (813) 229-1000
Facsimile: (813) 229-3692